**U.S. Department of Justice**
Bureau of Alcohol, Tobacco, Firearms and Explosives

# Report of Investigation

| Title of Investigation: Operation Sheriff of Nottingham | Investigation Number: 772010-16-0005 | Report Number: 97 |
|---|---|---|

## SUMMARY OF EVENT

Undercover meeting with Mark Anthony VELASQUEZ.

## NARRATIVE:

1. **UNDERCOVER CONTACT:** On January 12, 2017, at approximately 11:48 hours, ATF Special Agent (S/A) Christopher J. Labno, acting in an undercover capacity, met with Mark Anthony VELASQUEZ, Hispanic male, DOB:05/26/1964, FBI#: 925984AA1, SID#:IL23409850, and discussed cocaine, firearms and cigarette trafficking as well as stolen cargo and real estate.

2. S/A Labno should note that this undercover meeting was previously arranged through recorded telephone calls and text messages between S/A Labno and VELASQUEZ, which are documented in a separate Report of Investigation (ROI). Prior to this undercover contact, S/A Labno was equipped with disguised audio and video recording devices as well as an electronic transmitter. This report is based upon Agents' observations as well as a review of the electronic surveillance evidence associated with this transaction. A detailed summary of this conversation with VELASQUEZ is attached to this report, but should not be considered a verbatim account.

3. At approximately 13:00 hours, S/A Labno arrived at the Tio Louis restaurant located at 3856 S. Archer Avenue, Chicago, Illinois. At approximately 13:13 hours, S/A Labno observed a black Cadillac Escalade park in front of the above described restaurant. A short time later S/A Labno observed VELASQUEZ enter the restaurant and greet S/A Labno.

4. VELASQUEZ then joined S/A Labno at a table and had a meal with S/A Labno. As they ate, S/A Labno and VELASQUEZ had a conversation. Initially, S/A Labno and VELASQUEZ discussed contraband cigarette trafficking. S/A Labno asked VELASQUEZ if he wanted Newport cigarettes and VELASQUEZ agreed that he did. S/A Labno asked VELASQUEZ if he wanted Marlboro cigarettes and VELASQUEZ asked, "Can you get Marlboros? I'll take both of them." VELASQUEZ asked if S/A Labno wanted to trade cigarettes for firearms; "What do you want? Them things?" S/A Labno agreed and the conversation then turned to cigarette trafficking with S/A Labno and VELASQUEZ discussing trafficking from low (cigarette) tax states to high (cigarette) tax states. S/A Labno then advised VELASQUEZ, "Terry's telling me he's selling them to some Arabs." VELASQUEZ responded, "He's selling them to me!" S/A Labno and VELASQUEZ then continued to discuss

| Prepared by: Christopher J. Labno | Title: Special Agent, Chicago I Field Office | Signature: | Date: 2.17.17 |
|---|---|---|---|
| Authorized by: Bernard G. Hansen | Title: Group Supervisor, Chicago I Field Office | Signature: | Date: 2-21-17 |
| Second level reviewer (optional): Jeffery A. Magee | Title: Special Agent in Charge, Chicago Field Division | Signature: | Date: |

Case: 1:18-cr-00734 Document #: 325-12 Filed: 11/11/21 Page 2 of 3 PageID #:3124

how FERGUSON had been selling contraband cigarettes he had obtained from S/A Labno to VELASQUEZ.

5. The conversation then turned to firearms with VELASQUEZ telling S/A Labno that he would be willing to trade firearms for contraband cigarettes. VELASQUEZ stated, "I can get 'em all day!" VELASQUEZ continued, "I'll be honest with you bro. I'll put you in a car with a dude. I ain't gonna make a penny off of it. I ain't gonna make shit off of it. I'll put you in a car with a dude who's a solid motherfucker, and he'll bring you whatever you want. As many as you want." S/A Labno advised that he wanted to trade VELASQUEZ cigarettes for guns. Specifically, S/A Labno stated, "Yeah, but I'm willing to give you squares for them." VELASQUEZ responded, "Yeah, that's what I'm saying. But if anything were to go wrong, or happen when I'm transporting them—I'm done." VELASQUEZ continued, "I'll take care of that . . . you just gotta tell me what you want. He's got some with lasers on them."

6. The conversation then turned to trading cocaine for cigarettes. VELASQUEZ stated, "I'm good on that. That ain't a problem." S/A Labno advised that he had been trading cigarettes for cocaine from FERGUSON and liked the quality of FERGUSON's cocaine. VELASQUEZ laughed and stated, "You've been getting my shit off him too." S/A Labno asked VELASQUEZ if he thought FERGUSON had given him (S/A Labno) cocaine which had been supplied by VELASQUEZ. VELASQUEZ responded, "Yeah, but he usually steps on it. I'm surprised that he didn't." VELASQUEZ again reiterated that FERGUSON was selling S/A Labno's cigarettes to VELASQUEZ; "He's selling them to me bro." VELASQUEZ advised that he was the one selling the cigarettes to an Arab and that FERGUSON had been selling the cigarettes to him (VELASQUEZ) for approximately $30.00 per carton. S/A Labno and VELASQUEZ then discussed how FERGUSON was making money off of the cocaine and cigarettes and VELASQUEZ advised that his Arab buyer would take up to 1,000 cartons of cigarettes at a time. VELASQUEZ stated, "last time you gave him (FERGUSON) five hundred." S/A Labno should not that VELASQUEZ was discussing his participation in the (510) cartons of Newport 100 cigarettes for cocaine transaction on December 15, 2016 documented in ATF Report # 85.

7. At this point, the conversation turned to FERGUSON's workers with S/A Labno describing two men who were involved in several drug transactions and VELASQUEZ saying that these men were FERGUSON's workers "Hogan" and a man named "Billy." The conversation then turned to FERGUSON and his real estate dealings. VELASQUEZ advised that he was upset with FERGUSON over a house which FERGUSON was supposed to have sold him (VELASQUEZ). VELASQUEZ described this house as being in Griffith, Indiana and having several acres of property along with the house. VELASQUEZ described FERGUSON as cheap, saying "he's a fucking Jew."

8. The conversation then turned to firearms, with VELASQUEZ advising that his firearms source is from Kentucky. VELASQUEZ continued saying, "He's a solid motherfucker. He just brought my guys ten of 'em."

9. The conversation then turned back to contraband cigarettes with VELASQUEZ and S/A Labno discussing stamped versus unstamped cigarettes. VELASQUEZ advised that he recalled seeing the stamps from the latest shipment of cigarettes and that they had come from Virginia. VELASQUEZ stated, "I saw some of the stamps were Virginia and something else like Wisconsin. . . Missouri, some of them. But there was something else." VELASQUEZ then described his cigarette buyer as an Arabic male who "owned liquor stores, Dollar Stores and gas stations. He owns eighteen stores bro." VELASQUEZ explained, "I give it to one of my Arab guys and he brings it to his uncle."

10. The conversation then turned to fronting cigarettes and cocaine with VELASQUEZ complaining that he had fronted FERGUSON cocaine for cigarettes and that FERGUSON had not reciprocated. VELASQUEZ stated,

Case: 1:18-cr-00734 Document #: 325-12 Filed: 11/11/21 Page 3 of 3 PageID #:3125

| Title of Investigation: Operation Sheriff of Nottingham | | Investigation Number: 7720■■16-0005 | Report Number: 97 |
|---|---|---|---|

"Bro, I've given you thirty to forty thousand worth of shit (cocaine) and I've given you days, you can't give me a couple hours?"

11. The conversation then turned to major cartage theft, with VELASQUEZ detailing how he had stolen and then sold merchandise to FERGUSON. VELASQUEZ started by explaining that he and DOMINGUEZ had "started from scratch," stealing catalytic converters and then graduating to major cartage theft. VELASQUEZ detailed several major thefts such as lawn mowers, peach vodka and Frigidaire appliances including stoves. S/A Labno advised that he had passed on purchasing the peach vodka and VELASQUEZ stated that he understood as the vodka had been hyped, VELASQUEZ explained that he had sold the vodka to several black clubs and bars saying the "niggers loved it." With regard to the Frigidaire appliances, S/A Labno described how he had purchased several stoves from FERGUSON. VELASQUEZ stated, "He bought them from me bro! Bro, I'm the one who brought them over there--off the back of the alley on Roberts Road." S/A Labno should note that VELASQUEZ described the location where on October 27, 2016 S/A Labno and Officer Gutierrez had purchased ten (10) stolen Frigidaire appliances from FERGUSON at 10603 S. 80th Court, Palos Heights, Illinois. These items were reported stolen from Bolingbrook, IL on April 10, 2016 and documented in Bolingbrook Police Department Report #LB2160410002072. VELASQUEZ further discussed the theft of Nike clothing (pants) some of which FERGUSON had purchased and some of which he had passed up on. S/A Labno should note that the theft of a shipment of New Amsterdam Peach Vodka, which was stolen from Summit, Illinois between March 6-7, 2016, was documented under Summit, Illinois Police Department report #16S-01994. The shipment of stolen lawn mowers was documented under ATF Report of Investigation # 20.

12. The conversation then turned to FERGUSON's real estate business and his real estate corporations. VELASQUEZ then detailed how he believed that FERGUSON created his (FERGUSON's) real estate corporations, with VELASQUEZ explaining how FERGUSON used his wife's legitimate business to attract foreign Polish investors who FERGUSON was defrauding.

13. The conversation then turned to cocaine, with S/A Labno asking VELASQUEZ about FERGUSON's other cocaine suppliers. VELASQUEZ advised "He used to fuck with these biker dudes and these Mexicans, but since he started fucking with me he don't fuck with them no more." The conversation then began to conclude with VELASQUEZ and S/A Labno agreeing to contact one another the following week.

14. At approximately 13:54 hours, S/A Labno exited the restaurant and returned to his undercover vehicle. S/A Labno observed the vehicle which VELASQUEZ had arrived in, a Cadillac Escalade, and observed that the Illinois license plate is E934057. S/A Labno then left the area in his undercover vehicle.

15. This is only a summary of this undercover contact, and reference should be made to the electronic surveillance evidence inventoried as evidence pursuant to this undercover contact for more information.