**U.S. Department of Justice**
Bureau of Alcohol, Tobacco, Firearms and Explosives

**Report of Investigation**

| Title of Investigation: | Investigation Number: | Report Number: 166 |
|---|---|---|
| ███ | ███ | |

## SUMMARY OF EVENT:

Interview and subpoena service of Timothy FERGUSON and consent search of 7029 W. 72nd St., Chicago, Illinois.

## NARRATIVE:

1. **INTERVIEW/CONSENT SEARCH:** On October 30, 2018, at approximately 06:15 hours, ATF TFO Christopher Stenzel, Special Agents (S/As), Michael Ramos, Robert Crecelius, Sarah Mauricio, Paul Daou and Group Supervisor Bernard Hansen; along with CPD Sgt. Walt Chudzick and P.O.'s Sean Brandon, John Dolan, Robert Gallas, David Magana, Vernon Mitchell, and Edmund Zablocki executed the service of a grand jury subpoena issued for Timothy FERGUSON, White Male, DOB: ███ at 7029 W. 72nd St., Chicago, Illinois.

2. Specifically, at approximately 06:15 hours, Agents approached the above described residence and knocked on the front door of the residence. ███ answered the door at which point agents requested Timothy FERGUSON. ███ invited agents into the residence and Timothy FERGUSON emerged from a bedroom on the east side of the residence. FERGUSON was cooperative and explained that there were numerous children in the residence, including an infant that slept in his bedroom. TFO Stenzel asked FERGUSON to relocate to the front porch to discuss the grand jury subpoena.

3. Once outside on the front porch, TFO Stenzel served FERGUSON with a grand jury subpoena related to FERGUSON's ownership Ferguson Entertainment LLC, i.e. The Gaming Spa, a bar/video gaming establishment located at 10721 Ridgeland Ave., Chicago Ridge, Illinois, which is yet to open for business. FERGUSON accepted the subpoena and asked what was going on across the street at 7038 W. 72nd St. TFO Stenzel explained that agents were executing a search warrant at that location. TFO Stenzel further explained that the investigation included activities at 7029 W. 72nd St., the residence of Timothy FERGUSON.

4. At approximately 06:20 hours, TFO Stenzel asked FERGUSON if he would be willing to give consent to search the residence of 7029 W. 72nd St. FERGUSON agreed. TFO Stenzel then provided FERGUSON with ATF Form 3220.11, Consent to Search Form. TFO Stenzel then read this form aloud to FERGUSON, explaining each right concerning the proposed consent search to FERGUSON. TFO Stenzel made it clear to FERGUSON that he had the absolute right to refuse a search of his residence. FERGUSON subsequently agreed to the search and signed the Consent to Search form to memorialize his understanding of his rights concerning the consent

| Prepared by: Christopher A. Stenzel | Title: Task Force Officer, Chicago I Field Office | Signature: | Date: 11/8/18 |
|---|---|---|---|
| Authorized by: Bennie Mims | Title: Group Supervisor, Chicago I Field Office | Signature: | Date: 11-8-18 |
| Second level reviewer (optional): Celinez Nunez | Title: Special Agent in Charge, Chicago Field Division | Signature: | Date: |

ATF EF 3120.2 (10-2004)
For Official Use Only

search, as well as his willingness to waive these rights and allow a search of his residence. TFO Stenzel and S/A Crecelius also signed this form as witnesses. TFO Stenzel should note that the signed ATF Form 3220.11 is attached to this Report of Investigation (ROI).

5. Agents then reentered the residence and asked FERGUSON if there were any firearms or narcotics within the residence. FERGUSON stated that he had a firearm in his bedroom closet that was given to him by his father-in-law. FERGUSON also stated he had a valid FOID card. Agents relocated to the bedroom closet with FERGUSON where FERGUSON opened a small cash box and retrieved a "Beretta Pico" black cloth zippered case (Exhibit #000314) containing a Beretta Pico, .380, S/N PC052820 (Exhibit #000304), and a loaded magazine containing 6 rounds of .380 ammunition (ammunition Exhibit #000308). Agents took possession of the firearm and produced a receipt for property form (ATF form 3400.23). S/A Crecelius prepared the form citing that agents were seizing the firearm as evidence. FERGUSON then willingly signed the form.

6. TFO Stenzel then asked FERGUSON about the residence at 7029 W. 72nd. FERGUSON stated he rented the residence from a company called KM & F. FERGUSON stated he paid the rent to a man named "Andrew". TFO Stenzel asked "Andrew's" last name and FERGUSON stated he did not know the last name. FERGUSON was asked to produce Andrew's phone number, but while looking through his cell phone, FERGUSON stated he could not find the contact information. FERGUSON acknowledged that his father, Terry FERGUSON, owned the residence located at 7038 W. 72nd St. where agents were currently executing a search warrant. Timothy FERGUSON denied that Terry FERGUSON owned his residence at 7029 W. 72nd St. When asked how he paid his rent, FERSOIN stated he wrote checks from his account at US Bank and gave them to "Andrew". TFO Stenzel asked FERGUSON if there would be a reason that Terry FERGUSON was depositing checks written from Timothy's account for rent and FERGUSON had no response.

7. TFO Stenzel then asked FERGUSON about his business, Ferguson Entertainment LLC. FERGUSON stated he was the sole owner of the business and Terry FERGUSON had no involvement with the operations. TFO Stenzel explained that the grand jury subpoena required FERGUSON to produce all records related to the "Gaming Spa", including records related to funding and construction. At this point FERGUSON acknowledged that Terry FERGUSON has been involved in the construction of the interior of the bar.

8. As TFO Stenzel was interviewing FERGUSON, P.O. Dolan approached and requested FERGUSON to open the detached garage so it could be searched. FERGUSON stated he has never had access to the garage or the contents and they never gave FERGUSON keys. FERGUSON stated that KM & F controlled access to the garage and all the contents belonged to KM & F. Agents then asked FERGUSON why they could see the pool filter and children's bicycles in the garage through a small window on the east side. FERGUSON made no response. TFO Stenzel explained to FERGUSON that their investigation involved activities that occurred in the garage and again requested access. FERGUSON then stated "I can't, I just can't". TFO Stenzel then relocated to the garage with FERGUSON. TFO Stenzel peered through the east window and observed on a coffee table, within the garage, a small clear plastic bag containing a green leafy substance, suspect cannabis, and glass pipe. TFO Stenzel asked FERGUSON to come observe the contraband items through the window. FERGUSON then agreed to retrieve the keys for the detached garage from inside the residence.

9. At approximately 06:46 hours, FERGUSON opened the side door to the detached garage and allowed agents access to its contents. As agents entered the garage, FERGUSON freely stated that there were three guns in a card board box on one of the shelves. TFO Stenzel was directed by FERGUSON to a shelf on the east side of the garage along the south wall. TFO Stenzel selected a brown cardboard box from the shelf and observed it to contain three firearms and ammunition. Agents observed the garage to contain a seating area and coffee table

set up in front of a flat-screen TV on the south wall. Children's bicycles and a swimming pool filter were on the west side of the garage as well as some large items covered by a blue tarp.

10. Agents and Officers then conducted a systematic search of the detached garage. During this search, the following items were found, photographed in place and taken into custody during this search:

   - Exhibit number: 000301, one Smith & Wesson, Model 459, 9mm, pistol, S/N A730003, located by TFO Stenzel in the card board box selected from the shelf;

   - Exhibit number: 000302, one Smith & Wesson, Model 49, .38, revolver, S/N 25568, located by TFO Stenzel in the card board box selected from the shelf;

   - Exhibit number: 000303, one Beretta, Model 950, .38, revolver, S/N BER05978V, located by TFO Stenzel in the card board box selected from the shelf;

   - Exhibit number: 000309, one box Winchester-Western rounds of 9mm ammunition, located by TFO Stenzel next to the card board box selected from the shelf with exhibits 301, 302, and 303;

   - Exhibit number: 000310, one small clear plastic bag containing 23 assorted rounds of 9mm ammunition, located by TFO Stenzel in the card board box selected from the shelf with exhibits 301, 302, and 303;

   - Exhibit number: 000320, one glass narcotics pipe, recovered by TFO Stenzel from beneath a coffee table;

   - Exhibit number: 000321, one plastic bag containing green leafy substance, suspect marijuana, recovered by TFO Stenzel from beneath a coffee table;

   - Exhibit number: 000317, two boxes of plastic sandwich bags, suspect narcotics packaging co-located with exhibit #000318, recovered by TFO Stenzel in a wall cabinet on the east wall;

   - Exhibit number: 000318, one Office Depot electronic narcotics scale co-located with exhibit #000317, recovered by TFO Stenzel in a wall cabinet on the east wall;

11. TFO Stenzel also observed within the garage were three large white cabinets which were hidden beneath the large blue tarp. These cabinets appeared to be set up to grow cannabis, as they contained racks to hold potted plants and fertilizer.

12. TFO Stenzel then asked FERGUSON about the firearms recovered from the garage. FERGUSON stated that he received the firearms from an old man named ████ about three years ago. He stated ████ fell on hard times and was in some sort of trouble. ████ asked FERGUSON to keep them while he dealt with his "trouble". FERGUSON described ████ as a family friend. FERGUSON stated he was reluctant to allow agents access to the garage because of the cannabis recovered from the coffee table.

13. TFO Stenzel then asked FERGUSON if he would be willing to consent to a search of his business, the "Gaming Spa" located at 10721 Ridgeland Ave., Chicago Ridge, Illinois. FERGUSON agreed and gave verbal consent to agents to travel with him to the bar and search the premises.

14. At approximately 08:15 hours, S/A Brett Mervis, S/A Beau Jacobsen, S/A Paul Daou Sgt. Walt Chudzik, and P.O.'s Sean Brandon, John Dolan, Robert Gallas, David Magana, Vernon Mitchell, and Edmund Zablocki transported FERGUSON the "Gaming Spa" where they were allowed access to the business. Once inside, agents observed a large commercial space with a bar and numerous televisions and artwork on the walls. The bar did not appear to be stocked or ready to open for business. On top of the bar, agents observed a Home Depot invoice for plumbing fixtures with the customer listed as Terry FERGUSON using the address of 8143 Sunset Rd., Willowbrook, Illinois.

15. Agents the returned to 7029 W. 72nd St., Chicago, Illinois with FERGUSON at approximately 09:30 hours. At this time, Sgt. Walt Chudzik interviewed FERGUSON. Also present was P.O. Sean Brandon and S/A Paul Daou. The interview took place on the sidewalk in front of 7038 W. 72nd St, in an unincorporated area of Chicago. The time was approximately 0930 hours. FERGUSON was not under arrest, was not handcuffed, and free to leave at any time. He said that he wanted to provide as much information as possible, because he felt he did not do anything wrong.

16. FERGUSON stated he currently works at an insurance agency at 65th and Cicero, and has so for about 13 years. He said he typically works 10-12 hours a day, and makes roughly $90,000 a year. He stated as of late, he has been focusing on a gaming parlor that he is in the process of opening. He stated the business is called The Gaming Spa, under the license of Ferguson Entertainment LLC. He said it is located at 117th and Ridgeland, in Chicago Ridge. He said he currently pays $2700 a month rent on the business and $800 a month rent on his primary residence. FERGUSON stated he has licenses for 5 gaming machines, and that the machines revenue will cover most of his operating costs. He said his brother and sister will be helping him run the place, and that his father (Terry FERGUSON) helped with some rehab of the structure. He said his father has a rehabbing business, and has done a number of the houses in their neighborhood. FERGUSON also said the business will have a full kitchen and liquor license. He said most gaming locations only can serve beer and wine, but that he can serve all alcohol. FERGUSON anticipates opening November 2nd, 2018 as a bar, but he won't yet have the gaming machines. FERGUSON said he has accrued a lot of credit card debt from the business.

17. FERGUSON was asked about William WALSH, who resided at 7038 W. 72nd St. He initially stated he did not know WALSH, and that his father owned that residence since his grandmother died, about 5 years ago. He said he believes that WALSH had nowhere to live, so his father allowed him to live there. Then FERGUSON stated that WALSH does cut his grass regularly, and he sometimes uses his shower if his water heater goes out. FERGUSON stated that he does not know his father or WALSH to sell cocaine. FERGUSON was asked about the 3 firearms in his garage, and he said he was just holding them for a family friend. He stated a chiropractor in Burr Ridge said he was in trouble, and wanted FERGUSON to hold the guns for him. FERGUSON stated this subject is in his 80s, and may be losing his license for unknown reasons.

18. This is only a summary of these events and not intended to be a verbatim account. Reference should be made to the attached search warrant and inventory, as well as the recorded interviews, for more information.

    Attachment(s):
- Signed Consent to Search form (ATF 3320.11)
- (6) Photographs from 7029 W. 72nd St.
- (1) Photograph from 10721 Ridgeland Ave.
- Receipt for Property form (ATF 3400.23) signed by Timothy FERGUSON for firearm recovered from residence

- Receipt for Property form (ATF 3400.23) for items recovered from detached garage
- Signed Grand Jury Subpoena Proof of Service form (OBD-211) completed by TFO Stenzel