UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| UNITED STATES OF AMERICA | ) | |
| --- | --- | --- |
| | ) | No 18 CR 734 |
| vs. | ) | Hon. Matthew F. Kennelly |
| | ) | |
| | ) | |
| TERRY FERGUSON | ) | |

**<u>SUPPLEMENT TO MOTION TO VACATE SENTENCE UNDER §2255</u>**

COMES NOW the defendant, TERRY FERGUSON, by and through his attorney, Beau B. Brindley, and respectfully moves this Honorable Court to consider this supplement to his recently converted petition to vacate sentence pursuant to §2255. In support, he states as follows:

Mr. Ferguson maintains all of the arguments presented in his prior filings regarding the conflict of interest issue at the heart of his §2255 petition. He specifically underscores and highlights the argument that the Seventh Circuit has recognized that the investigation of an attorney runs the equal risk that that the attorney become "unduly hostile toward [the prosecution]," thus "losing objectivity . . . ." *United States v. Lowry*, 971 F.2d 55, 61 (7th Cir. 1992), Dkt. 498 at 3. When this occurs, an actual conflict of interest is created. The government's own arguments, as noted in the reply brief, suggested they believed that such hostility was indeed at the heart of the arguments on behalf of Mr. Ferguson. That triggers the actual conflict of interest analysis, under which the absence of a conflict colloquy requires that the sentence be vacated and Mr. Ferguson be restored to the position he was in prior to sentencing (i.e. on bond pending sentencing by the district court). It is impossible to gauge how undue hostility and lost objectivity may have impacted an attorney's performance or altered what he might or might not have done.

1

At the prior hearing, the Court noted that Mr. Ferguson's motion did not ask to return to "square one," but only to the posture the case was in at the time of the disclosure by Agent Labno (pre-sentencing). Mr. Ferguson has now indicated that it is his position that the conflict colloquy should indeed have occurred prior to the plea in this case, as the questioning of Ferguson by Labno about the undersigned was known to the parties from the beginning of the case. The government knew, from the beginning, that there had been an investigation into whether Mr. Ferguson and his attorneys were some sort of "co-conspirators." They should have asked the Court for a conflict colloquy based on the information contained in the agent report. They did no such thing. Mr. Ferguson takes the position that the failure of both the government, defense counsel, and the Court to request a conflict colloquy based on that agent report, which was filed in the case with the motion to suppress, extends his §2255 claim regarding conflict of interest back to the time before he entered his guilty plea. Mr. Ferguson further maintains that the government's failure to disclose an investigation that was bound to come up during the litigation of the case to the Court, and to seek the proper colloquy, constituted what he describes as a "cover-up" that prevented the Court from engaging in the colloquy it should have and from obtaining additional information about an investigation, which, if disclosed, would not have painted Agent Labno or the government in a good light. Hence, Mr. Ferguson maintains that the relief sought should include the vacation of his sentence and the guilty plea as Mr. Ferguson was not able to make an informed evaluation of the legal meaning and ramifications of the conflict issue at any time because the government did not disclose it as they should have and defense counsel, likewise, did not request it after reviewing the arrest report that has been cited in multiple filings in this case.

Mr. Ferguson further notes that the government took an altogether different approach to the companion obstruction of justice case in which they raised the question of conflict on the basis that

one defendant sent the undersigned an image of a subpoena for evaluation of its impact on Mr. Ferguson's defense. The undersigned was disqualified in that case by Judge Norgle based on the government's motion. Mr. Ferguson notes the inconsistent manner in which that purported conflict was addressed when compared to the one in this case, which, if the government really believed in its co-conspirator allegation, should have been far more significant. He also notes that, when the undersigned was previously investigated in 2014 following a search warrant being executed on his office, the government required that conflict colloquies be done with all of his clients at the time—advising the clients of the ongoing investigation. Mr. Ferguson contends that this too is inconsistent with the manner in which the government handled the situation in this case.[1] Here, the parties were aware of Labno seeking information against the undersigned in the arrest report, and the government was aware of an investigation into whether the undersigned and Mr. Ferguson were, as Agent Labno put it, co-conspirators. Yet, the government did not identify the issue for the court or permit the Court to ask questions about this "investigation," which could have revealed damaging information about the government and its efforts in this case. Nor did defense counsel request the conflict colloquy as Mr. Ferguson maintains he should have.

Finally, Mr. Ferguson asks the Court to consider the failure of the undersigned to ask certain questions during his sentencing hearing. The undersigned cannot take any position on these potential areas of inquiry, other than to agree with Mr. Ferguson that the questions were not asked. Those areas of inquiry are as follows:

1. Agent Labno was not asked follow-up questions regarding the basis of the

---

[1] Mr. Ferguson is aware of the distinction between the 2014 case in which a warrant was obtained and served and this case, in which an investigation was approved and attempted by Agent Labno.

approved investigation into the undersigned and Mr. Ferguson following his statement that the investigation was, at some unknown point, approved by Justice.

2. Cross-examination of witness Guajardo was extremely limited in scope and did not delve into a detailed attack on the witness's credibility.

3. Cross-examination of Jesus Dominguez did not include questioning on whether Mr. Ferguson was present at the time the firearms were sold.

Mr. Ferguson also requests that the Court note its own comments at the beginning of sentencing wherein it questioned the undersigned's decision-making regarding the motion to dismiss based on Labno's approach of sentencing witnesses for the defense. The "Walmart law license" commentary stood out to Mr. Ferguson as evidence of the Court's evaluation of the undersigned's performance as counsel, and Ferguson asks the Court to consider the impact that dialogue may have had on the undersigned's performance at the proceedings. The undersigned also takes no position on this dialogue with the Court, other than to note it at the request of Mr. Ferguson.

Mr. Ferguson takes the position that the investigation into whether he and his attorney were "co-conspirators" created an actual conflict of interest from the beginning of the case, for which he was afforded no opportunity for a conflict colloquy to which he had a right. He maintains that, when an allegation of conspiracy between the defendant and his attorney is known to the government, that necessarily creates an actual conflict of interest that requires a conflict colloquy and, in the absence of the colloquy, cannot be remedied without a reversal of conviction. *Holloway v. Arkansas*, 435 U.S. 475, 491-92 (1978) (Reversing because "even with a record of the sentencing hearing available it would be difficult to judge intelligently the impact of a conflict on the attorney's representation of a client. And to assess the impact of a conflict of interests on the

4

attorney's options, tactics, and decisions in plea negotiations would be virtually impossible. Thus, an inquiry into a claim of harmless error here would require, unlike most cases, unguided speculation."); *Cuyler v. Sullivan*, 446 U.S. 335, 349–50 (1980) (a defendant who shows that a conflict of interest actually affected the adequacy of his representation need not demonstrate prejudice in order to obtain relief and establishes the constitutional predicate for his claim of ineffective assistance when he shows that his counsel actively represented conflicting interests); *Wood v. Georgia*, 450 U.S. 261, 272 (1981) (When "the possibility of a conflict of interest [is] sufficiently apparent" it will "impose upon the court a duty to inquire further."); *Wheat v. United States*, 486 U.S. 153, 164 (1988) (The "presumption in favor of petitioner's counsel of choice … may be overcome not only by a demonstration of actual conflict but by a showing of a serious potential for conflict. The evaluation of the facts and circumstances of each case under this standard must be left primarily to the *informed judgment* of the trial court.")(emphasis added). Mr. Ferguson maintains that these cases, when taken together, mandate that his §2255 petition be granted.

The undersigned provides this supplement to the Court to make sure that Mr. Ferguson's specific positions on the §2255 petition are documented. He remains as counsel at Mr. Ferguson's express request after discussing with him the possibility of obtaining other counsel pursuant to the Court's order. The undersigned has endeavored to present Mr. Ferguson's positions here as completely as possible as he has always maintained that this case was replete with unfairness and injustice toward Mr. Ferguson. The undersigned has highlighted those issues throughout his filings in this case and his arguments on behalf of Mr. Ferguson at sentencing. This conflict of interest issue, identified by Mr. Ferguson, simply constitutes another layer of injustice that compels him to seek relief from the Court.

WHEREFORE, Mr. Ferguson asks this Court to consider this supplement to his petition to vacate the judgment against him pursuant to §2255.

Respectfully submitted,

/s/ Beau B Brindley

LAW OFFICES OF BEAU B. BRINDLEY
53 West Jackson Boulevard
Suite 1410
Chicago, Illinois 60604
(312) 765-8878