**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | **Case No. 18 CR 734-1** |
| **vs.** ) | |
| ) | |
| **TERRY FERGUSON,** ) | |
| ) | |
| **Defendant.** ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

MATTHEW F. KENNELLY, District Judge:

Terry Ferguson has moved under 28 U.S.C. § 2255 to vacate his sentence,

alleging a potential or actual conflict on the part of his counsel, Beau Brindley. The

relevant portion of section 2255 states:

> A prisoner in custody under a sentence of a court established by Act of
> Congress claiming the right to be released upon the ground that the
> sentence was imposed in violation of the Constitution or laws of the United
> States . . . may move the court which imposed the sentence to vacate, set
> aside or correct the sentence.

28 U.S.C. § 2255(a).

For the reasons below, the Court denies Ferguson's motion.

### Background

The charges in this case arose from an undercover ATF investigation that began

in November 2015. At some point during the investigation, ATF undercover agents were

made aware that Ferguson was a potential source for stolen guns and narcotics.

Following a lengthy undercover operation, the government filed a criminal complaint and

obtained an arrest warrant for Ferguson on October 29, 2018. This arrest warrant was executed on the morning of October 30 at Ferguson's home in Willowbrook, Illinois. ATF agents also conducted a search of Ferguson's home, garage, and a vehicle parked in the driveway. They did not have a search warrant at the time, though they had applied for one.

The search became the subject of contentious proceedings before this Court on a motion to suppress filed by attorney Brindley on Ferguson's behalf. The Court made an oral ruling denying Ferguson's motion in June 2020, followed by a written opinion issued in January 2021. The Court concluded that the investigating agents had violated Ferguson's Fourth Amendment rights in connection with the October 2018 searches. But at the time of the illegal search, prosecutors had a warrant to seize Ferguson's cell phone, and they had presented to a judge an application for a search warrant for his home, which was issued a few hours after Ferguson's arrest. The Court therefore concluded that the inevitable discovery doctrine precluded suppression of the evidence obtained via the agents' violations of Ferguson's rights. In particular, because the search warrant was "untainted by the initial illegality," *Murray v. United States*, 487 U.S. 533, 537 (1988), the Court determined that the evidence would have been discovered via an independent, untainted source. *See* Mem. Op. & Order, Jan. 19, 2021, ECF No. 244.

Ferguson's trial, originally set for November 2019, was continued first to February 2020 due to a scheduling conflict on Brindley's part and then to July 2020 due to a health issue involving Ferguson. After the Court orally denied the motion to suppress in June 2020, it continued the trial to November 2020 due to the COVID-19 pandemic,

which at that point had led to a suspension of jury trials in this District.  In September 2020, the trial was again continued, by agreement due to a mix of reasons, to April 2021.  In November 2020, Ferguson's two co-defendants pled guilty.

Ferguson himself pled guilty to two counts of the indictment in March 2021.  The Court set Ferguson's sentencing for a date in June 2021.  This was then reset to November 2021, largely at Ferguson's request so that he could try to resolve a pending state court case against him (in which the charges appear to have been filed in August 2021).  In early November, Ferguson's sentencing was reset to December 15, 2021 due to a scheduling conflict on Brindley's part; the Court's order stated that the sentencing "will not be reset again for any reason."  Min. Entry, Nov. 12, 2021, ECF No. 326. Ferguson agreed to conduct the sentencing hearing by video conference, a procedure that was allowed during the COVID-19 pandemic.

Two days before the scheduled December 2021 sentencing, Brindley filed a "status report" in which he sought yet another continuance, this time due to a scheduling conflict.  Brindley's status report also referred to a possible issue regarding the validity of Ferguson's guilty plea due to a claimed representation that the pending state court case would be resolved as part of the plea.  *See* Status Report ¶ 7, Dec. 13, 2021, ECF No. 335.  A telephonic hearing was held the next day, December 14.  The Court's order following that hearing stated:

> Defendant's motion to continue [337] is granted.  Sentencing hearing set for 12/15/2021 is vacated and reset to 1/4/2022 at 1:30 p.m.  This is the final continuance.  The Court will not entertain any further requests for continuance of the sentencing.  The sentencing hearing will be held in person in Courtroom 2103.  The defendant and defense counsel are ordered to appear in person at 1/4/2022 at 1:30 p.m.  The defendant is to be prepared to address the points regarding the guilty plea raised by defense counsel in paragraph 7 of his status report filed on 12/13/2021

3

[335].  The government is directed to promptly order the transcript from the change of plea hearing held on 3/12/2021 [267].

Min. Entry, Dec. 14, 2021, ECF No. 338.

On January 3, 2022, the day before the reset sentencing hearing, Brindley filed a status report suggesting that his previously-referenced scheduling conflict (involving a trial in California in which the jury was deliberating) had not yet resolved.  Brindley also referenced a health issue of his own, a respiratory issue that he appeared to attribute to chronic asthma.  This filing was followed, later the same day, by an "emergency" motion seeking a continuance of the sentencing hearing.  After a brief hearing on January 4, during which the health of both Ferguson and Brindley was discussed, the Court continued the sentencing by about a week, to January 12.

On January 11, 2022, the day before the oft-reset sentencing hearing, Brindley filed on Ferguson's behalf a motion to withdraw Ferguson's guilty plea.  The motion was based on what was contended to be Ferguson's "belief" that his federal guilty plea would preclude any potential state-court charges arising from the conduct for which he had been investigated by federal authorities (namely ATF).  For this, Brindley's motion relied on the following paragraph in Ferguson's plea agreement:

> This Agreement concerns criminal liability only.  Except as expressly set forth in this Agreement, nothing herein shall constitute a limitation, waiver, or release by the United States, any of its agencies of any administrative or judicial civil claim, demand, or cause of action it may have against defendant or any other person or entity.  The obligations of this Agreement are limited to the United States Attorney's Office for the Northern District of Illinois and cannot bind any other federal, state, local prosecuting, administrative, or regulatory authorities except as expressly set forth in this Agreement.

Plea Agr. at 16, Mar. 12, 2021, ECF No. 268.  It is readily apparent that this language does not say, suggest, or so even hint that there could be no state-court charges; if

4

anything, the last quoted sentence indicates exactly the opposite. But Brindley's motion said that *he had told Ferguson* that this paragraph, based on his "experience," meant that Ferguson could not be charged in state court on anything that had arisen from the federal investigation. *See* Mot. to Withdraw Guilty Plea at 3–4, ECF No. 349. Brindley's motion also effectively accused the ATF agents of misconduct in initiating the state-court charges.

On January 24, 2022, the Court, after considering written submissions from both sides, oral argument, and testimony from Ferguson, granted his motion to withdraw the guilty plea. The Court found that although Brindley's advice to Ferguson regarding the import of the guilty plea vis-à-vis other potential charges was "unquestionably incorrect," it nonetheless formed part of Ferguson's understanding at the time and was material to his decision to plead guilty. The Court concluded that this amounted to a fair and just reason warranting withdrawal of the guilty plea.

The Court set the case for trial on August 29, 2022, a date agreed to by both sides (including Brindley). This was later moved to Tuesday, September 20, however, due to a scheduling conflict involving Brindley. On Friday, September 16, 2022, after the first day of the final pretrial conference and one business day before that conference was to be completed, Brindley filed, on Ferguson's behalf, a motion to dismiss the indictment, accusing the ATF agents of vindictive and otherwise improper conduct in investigating and prosecuting him. On Monday morning, September 19, the day of the continued final pretrial conference, Brindley filed yet another motion for a continuance of the trial, citing health-related issues (involving him, not Ferguson). The motion argued that Brindley was "Mr. Ferguson's longtime counsel of choice" and that "a denial of this

request for continuance would essentially eliminate his counsel of choice." Emergency Mot. for Continuance at 5, ECF No. 393. The Court notes that matters raised in the motion had existed at the time of the pretrial conference's first session on September 14 but had not been raised at that time.

At the outset of the September 19 continued final pretrial conference, the Court denied as untimely the late-filed motion to dismiss, without prejudice to refiling it as a post-trial motion. Near the end of the pretrial conference, which by this point had gone on for close to ninety minutes (a good deal of it consisting of vigorous argument by counsel), the Court denied the motion for continuance. This was at least partly due to the fact that it involved matters that were claimed to have existed for months but that Brindley had not brought to the attention of either the judge before whom he had been on trial for weeks or this Court, and for which he had made no effort to seek medical attention. The Court found the timing of the motion suspect and denied it.

Later the same day, Brindley filed a motion to reconsider, citing advice from his physician and a psychologist—with whom he had consulted only after the Court denied the motion for continuance—and attaching letters from both. The next morning, with the summoned jurors in court and ready to go, the Court granted a continuance of the trial, to January 3, 2023. In this regard, the Court also took into account a health condition reported by Ferguson. The Court's order included the following language:

> The trial date of 9/20/2022 is vacated due to health issues regarding the defendant and defense counsel. The motion to reconsider [396] is terminated as moot. The trial date is reset to 1/3/2023 at 9:00 AM. The Court advised counsel and the defendant that an actual start date later in that week is likely. This date is not subject to change due to the age of this case (4 years at that point) and the numerous continuances that have been granted. The defendant was advised and understands that if his primary counsel Mr. Brindley is unavailable on that date the case will proceed with

6

> Mr. Thompson [Brindley's partner] as lead counsel. The defendant was also advised and understands that if he would not be comfortable with Mr. Thompson as lead counsel he needs to make that decision now and must file an appearance of additional or substitute counsel within 10 days of today's date. Defendant is directed to file weekly status reports under seal starting on 9/23/2022 (until relieved by the Court) regarding counsel's health status and compliance with doctors' orders and regarding the health status of the defendant.

Min. Entry, Sept. 20, 2022, ECF No. 397.

On January 3, 2023, the morning of the rescheduled trial, Ferguson again pled guilty, this time to one count of conspiracy to possess with intent to distribute and distribution of a controlled substances, 21 U.S.C. § 841(b)(1)(B), and one count of possession of a firearm by a felon, 18 U.S.C. § 922(g)(1). All other charges were to be dismissed at the time of sentencing. The sentencing—perhaps unsurprisingly, given the history of the case—was continued several times and was ultimately rescheduled for two dates in October 2023. On the day before the hearing was to begin, Brindley filed, on Ferguson's behalf, another motion to dismiss the indictment, alleging the same claimed misconduct that he had asserted on earlier occasions. The Court denied the motion at the outset of the sentencing hearing on October 19, 2023.

On Friday, October 20, after a two-day hearing that included extensive testimony as well as argument by counsel and Ferguson's allocution, the Court imposed a sentence of eighty-four months imprisonment. This was significantly below the advisory Guidelines range of 135 to 168 months. The judgment was entered on the docket on Tuesday, October 24—but not before Brindley filed on Ferguson's behalf, on the evening of October 23, a motion to reconsider the denial of the late-filed motion to dismiss, as well as a motion for release pending appeal. The Court denied both of those motions in a written opinion issued on October 30, 2023. Mem. Op. & Order, Oct.

30, 2023, ECF No. 477.  On November 6, 2023, Ferguson filed a notice of appeal.

About two and one-half months after filing the notice of appeal, Ferguson—still represented by Brindley—filed a motion to vacate the judgment.  He premised this upon what he contended was "a potential conflict of interest" involving Brindley.  *See* Mot. to Vacate J. at 1.  Notably, Brindley—the lawyer with the claimed conflict—filed the motion on Ferguson's behalf.

Ferguson's motion cited as a basis testimony by one of the ATF investigators, agent Christopher Labno, at the sentencing hearing in October 2023.  Specifically, the motion stated:

> Even before [the sentencing] hearing, Mr. Ferguson, the Court [sic], and all of the attorneys were aware that ATF Agent Chris Labno, upon originally arresting Mr. Ferguson in this case in 2018, began to question him about [attorney Brindley] and potential involvement in criminal activity.  However, during Agent Labno's testimony on October 20, 2023, he testified that his questioning of Mr. Ferguson about [Brindley] was done pursuant to a DOJ-approved investigation of [Brindley].

*Id.*  Ferguson (again, via Brindley, who filed the motion) argued that the Court should have stopped the sentencing hearing at that point to allow Ferguson to consult with separate counsel and determine how to proceed.

On February 12, 2024, this Court issued an order in which it concluded that it could consider Ferguson's motion to vacate the judgment only if it were construed as a motion for relief under 28 U.S.C. § 2255.  The Court gave Ferguson an opportunity to consider whether he wished the Court to consider the motion as a section 2255 motion.  The Court also gave Ferguson the opportunity to confer with separate counsel in determining whether to proceed.  On the latter point, the Court stated:

> Because Mr. Ferguson has alleged that his current attorney has a potential conflict of interest—a contention on which the Court expresses no view—it

8

may be prudent for him to consult with separate counsel regarding the issue of converting his motion to vacate to a motion under 28 U.S.C. § 2255. Mr. Ferguson may do that on his own, of course. Alternatively, if he qualifies for appointment of counsel under the Criminal Justice Act, 18 U.S.C. § 3006A, and can demonstrate this by way of the requisite financial affidavit filed under oath, the Court will appoint counsel on his behalf. Attorney Brindley is directed to immediately communicate this to Mr. Ferguson (and is directed to confirm by a filing on the docket by February 13, 2024 that he has done so) and is directed to promptly facilitate submission of the requisite financial affidavit if Mr. Ferguson wishes to take that route.

Mem. Op. & Order at 4, Feb. 12, 2024, ECF No. 500. The required certificate was filed the next day, February 13. *See* Notice of Intent ¶ 1, Feb. 13, 2024, ECF No. 501. Ferguson did not—then or later—take the Court up on its offer to appoint separate counsel.

Also on February 13, and again through Brindley, Ferguson filed a notice of his intention to convert his motion to vacate the judgment to a section 2255 motion. On February 20, this Court conducted a hearing in which Ferguson confirmed his intentions and converted the motion to a section 2255 motion. The Court then permitted Ferguson to file a supplement to the motion, which he did in mid-March 2024. The Court then set a briefing schedule which contemplated the motion being fully briefed in May 2024.

In late April 2024, the court of appeals—to which Ferguson had appealed following the imposition of sentence—remanded the case for a limited purpose. Specifically, at Ferguson's request—made through Brindley, who was (and is) still representing him—the court of appeals suspended appellate briefing and remanded the case "for the limited purpose of permitting the district court to conduct a hearing at which any potential conflict with attorney Beau Brindley can be addressed with defendant-appellant Terry Ferguson." Order of Apr. 30, 2024, ECF No. 515.

This Court then conducted a hearing, during which it questioned Ferguson

9

thoroughly.  The Court then entered the following order:

> This case was remanded by the Court of Appeals (7th Cir. Case No. 23-3198) "for the limited purpose of permitting the district court to conduct a hearing at which any potential conflict with attorney Beau Brindley can be addressed with defendant-appellant Terry Ferguson." See 7th Cir. Order of 4/30/2024.  The Court conducted a hearing on today's date with the defendant participating by video from FCI Milan; Mr. Brindley participating in the courtroom; and AUSA Misty Wright participating by video.  The Court fully explored the potential conflict(s) of interest on the part of Mr. Brindley. *Mr. Ferguson made it clear that he fully understood his right to conflict-free counsel; his right to consult with conflict-free counsel (including an offer by the Court to appoint separate counsel for that purpose); as well as the potential conflict(s) on the part of Mr. Brindley.  Mr. Ferguson further made it clear that despite the potential conflict(s) he wished to proceed with Mr. Brindley as his counsel for both his direct appeal and his pending proceeding under 28 USC 2255.*  The Court finds based on the colloquy that Mr. Ferguson knowingly and voluntarily waived his right to conflict-free counsel in this regard and will permit him to proceed with Mr. Brindley as his counsel.

Order of June 14, 2024, ECF No. 529 (emphasis added).

The Court notes here that there is no viable basis to believe that anything different would have happened had the Court conducted a similar colloquy during the course of the sentencing hearing.  And Brindley has remained in the case as Ferguson's lawyer—with Ferguson's express agreement—ever since.

## Discussion

Ferguson's section 2255 motion was initially premised upon a claimed *potential* conflict of interest that existed between himself and Brindley.[1]  Then, after the government's response pointed out the high hurdle that Ferguson would have to clear to

---

[1] The initial motion to vacate did make a reference to an actual conflict, but it was a single reference, made almost in passing.  *See* Mot. to Vacate J. at 2 ("Mr. Ferguson, having reviewed the sentencing transcript, now recognizes that there *might* be a potential *or* actual conflict of interest that became manifest during his sentencing hearing." (emphases added)).  The thrust of the motion as a whole was that there was a *potential* conflict.

obtain relief for a potential conflict, Ferguson and Brindley's argument shifted to a contention that there was an actual, present conflict of interest. One other apparent shift is from Ferguson and Brindley's initial contention that the conflict became manifest during the sentencing hearing, when an investigating agent testified that he had the okay from prosecutors back in 2018 to question Ferguson about Brindley, to a broader contention that the conflict has been there all along. Ferguson's contention is that his Sixth Amendment right to effective assistance of counsel was infringed, and as a result the Court should vacate his sentence and also, apparently, his guilty plea.

The Sixth Amendment secures a criminal defendant's right to effective assistance of counsel. Included in this is the right to "representation that is free from conflicts of interest." *Wood v. Georgia*, 450 U.S. 261, 271 (1981) (citation omitted); *see also United States v. Lafuente*, 426 F.3d 894, 897 (7th Cir. 2005) (citation omitted) ("Criminal defendants are guaranteed effective assistance of counsel, and have the right to representation free from conflict of interest, at all stages of the proceedings against them."). "A conflict exists when defense counsel places himself in a position conducive to divided loyalties." *United States v. Hubbard*, 22 F.3d 1410, 1418 (7th Cir. 1994) (citation and quotation marks omitted).

The proposition that the Sixth Amendment requires not just assistance of counsel, but *effective* assistance of counsel, is grounded in the premise that effective counsel is necessary to ensure the accused receives a fair trial. *See Mickens v. Taylor*, 535 U.S. 162, 166 (2002). Accordingly, "assistance which is ineffective in preserving fairness does not meet the constitutional mandate, and it also follows that defects in assistance that have no probable effect upon the trial's outcome do not establish a

constitutional violation." *Id.* (internal citation omitted).

The Supreme Court has articulated a two-step test to apply when determining whether defense counsel's assistance is so ineffective as to warrant reversal:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defendant. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Strickland v. Washington*, 466 U.S. 668, 687 (1984). To establish the first element, the defendant must show "that counsel's representation fell below an objective standard of reasonableness"; the second element requires showing "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." *Id.* at 688, 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

There is an exception to this general rule. In circumstances where assistance of counsel has been denied either entirely or at a critical stage of the proceedings, "the likelihood that the verdict is unreliable is so high that a case-by-case inquiry is unnecessary." *Mickens*, 535 U.S. at 166. Accordingly, courts may presume a prejudicial effect when the assistance of counsel is denied during a critical stage. *Id.* The same is true when an actual conflict of interest exists, *id.*, because an actual conflict effectively deprives the defendant the assistance of counsel. *See, e.g.*, *Freeman v. Chandler*, 645 F.3d 863, 868 (7th Cir. 2011) (citation omitted) ("[D]efense counsel's conflict of interest can violate a defendant's Sixth Amendment right to effective assistance of counsel.").

Ferguson contends that his Sixth Amendment right to effective counsel was violated because his attorney Brindley was under an ongoing investigation by the government. Ferguson says that the investigation created an actual conflict between him and Brindley that divided their interests and prevented him from receiving effective assistance of counsel.

Ferguson further contends that this Court should have held a hearing on the claimed conflict. He argues that by failing to conduct a colloquy on the matter so that he could knowingly waive the conflict or be given the opportunity to seek unconflicted counsel, the appropriate remedy is to vacate his sentence and, it appears, his guilty plea.

Ferguson alternatively contends that if the Court determines there was only a potential conflict of interest, his sentence and guilty plea should be vacated because he was prejudiced by Brindley's ineffective assistance.

## A.     The timing of Ferguson's motion

Ferguson's motion to vacate, filed somewhat over two months after the sentencing hearing, contended that "there might be a potential or actual conflict of interest [involving Brindley] that became manifest during his sentencing hearing." Mot. to Vacate J. at 2. Ferguson conceded that both he and Brindley were aware years earlier that an investigating ATF agent questioned Ferguson in 2018—pre-indictment— regarding Brindley. But Ferguson (again, in a motion signed by Brindley) said that at the sentencing hearing, the agent had testified that his pre-indictment questions to Ferguson about this were approved by the Department of Justice. *Id.* at 1. Ferguson's motion seemed to indicate (though it really did not explain) that this was a material

development.  Ferguson/Brindley then stated in the motion that "[o]nce that testimony was on the record, [Brindley] was, at least as a technical matter, laboring under a *potential conflict of interest.*"  *Id.* at 2 (emphasis added).  He argued that the Court should have stopped the sentencing hearing and allowed Ferguson to consult with "independent conflict-free counsel" at that point.  *Id.*

It strains credulity to contend that the sentencing hearing testimony represented a material new development.  As the motion conceded, by the time of the sentencing hearing, both Ferguson and Brindley had been aware of the agent's questions to Ferguson about Brindley for something like *five years*.  (Ferguson obviously knew it at the time the questions were posed in 2018, and Brindley found out about it early on, at least when discovery was produced post-indictment if not before.)  It is hard to see, and the defense submissions do not explain in any viable way, what difference it made to "learn," five years later, that the questions had been authorized by prosecutors.

As importantly, there is nothing *anywhere* in the record before the Court suggesting—and Ferguson/Brindley do not contend—that any sort of "investigation" of Brindley remained ongoing at any relevant time during the pendency of the case (e.g., at the time of Ferguson's guilty plea in January 2023 or at the time of the October 2023 sentencing hearing).  The simple fact is that, when the passing reference to the five-years-earlier question about Brindley was made during the sentencing hearing, the Court did not see (and there was no basis for it to find) that there was any *current* potential or actual conflict.

To be sure, Ferguson contends that the claimed conflict arose much earlier, indeed, *more than five years* earlier.  At the time of Ferguson's arrest in October 2018,

ATF Special Agent Christopher Labno asked him questions about Brindley. According to the report prepared by Labno, he "told FERGUSON that investigators believed that he was involved in something shady with his lawyer Beau (BRINDLEY)." Def.'s Mot. to Suppress Ex. A at 3. When questioned directly whether he knew Brindley was involved in criminal conduct, Ferguson responded "I believe I do. Agents then asked if FERGUSON would be willing to proactively cooperate against BRINDLEY as well as the other individuals whom they discussed. FERGUSON stated that he would, saying I told you I'm with you a thousand percent." *Id.*

But despite this, Ferguson maintained his attorney-client relationship with Brindley after he was indicted and all the way through the nearly five years the case was pending before the Court. And neither Brindley nor Ferguson brought the agent's pre-indictment questioning about Brindley to the Court's attention at any time prior to the October 2023 sentencing hearing. The section 2255 motion seems to take the position that the Court already knew about it or was at least on notice. But there is no viable basis for this contention. The proposition that the Court knew or was on notice stems from the fact that the investigative report that included the reference to agent Labno's questions to Ferguson was attached as an exhibit to the motion to suppress that Ferguson filed in December 2019. *See* Def.'s Mot. to Suppress, Ex. A, ECF No. 161. But any reference to that report in the motion itself involved a separate point; nothing in the text of the motion referenced Labno's question to Ferguson about Brindley. And the Court can confidently say that it was not aware of these particular contents of the interview report until it was discussed in connection with Ferguson's sentencing close to four years later.

15

With these deficiencies in Ferguson's motion noted, the Court proceeds to address the motion's merits directly.

**B.    Actual vs. potential conflict of interest**

A key inquiry when determining whether to apply the general *Strickland* prejudice requirement or instead presume prejudice is whether there was an *actual* conflict as opposed to a *potential* conflict.  The Supreme Court has clarified that "an actual conflict of interest mean[s] precisely a conflict *that affected counsel's performance*—as opposed to a mere theoretical division of loyalties."  *Mickens*, 535 U.S. at 171 (quotation marks omitted).  Under such circumstances, the defendant must show that the conflict had an "adverse effect" on the attorney's performance by establishing "that there is a reasonable likelihood that his counsel's performance would have been different had there been no conflict of interest."  *Blake v. United States*, 723 F.3d 870, 880 (7th Cir. 2013) (citation and quotation marks omitted).

One circumstance in which an actual conflict of interest may arise is "[i]f a criminal defendant's attorney is under investigation by the prosecutors of [their] client." *Lafuente v. United States*, 617 F.3d 944, 946 (7th Cir. 2010) (citation omitted).  An attorney under investigation may, the argument goes, be "in a position conducive to divided loyalties," *Hubbard*, 22 F.3d at 1418, because the attorney may "either refrain from aggressive cross-examination during the trial in order that he might gain the favor of his potential prosecutors, or that he would be unduly hostile toward them, losing objectivity, and thus harm [his client's] rapport with the jury."  *United States v. Lowry*, 971 F.2d 55, 61 (7th Cir. 1992) (citation omitted).  The mere fact, however, that an attorney is under investigation is not enough to give rise to an *actual* conflict.  *See*

*Hubbard*, 22 F.3d at 1418. "[A]n actual conflict arises only where there is a danger that [counsel] would ineffectively represent his client because of fear that authorities might become aware of the attorney's own misconduct if he undertook effective representation." *Blake*, 723 F.3d at 881 n.10 (citation and quotation marks omitted).

Ferguson now contends that the moment agent Labno sought cooperation regarding the potential criminal actions of Brindley, a conflict arose. Ferguson asserts that his interest in seeking a cooperation deal with Labno was incompatible with Brindley's ability to effectively represent him because "[a] lawyer cannot possibly counsel the defendant about whether to seek cooperation against the lawyer himself." Def.'s Reply Mem. Regarding § 2255 Pet. at 2. Therefore, according to Ferguson, at the moment when Labno sought his cooperation against Brindley, their loyalties divided in a manner that adversely affected him.

Based on the facts presented, this Court cannot conclude that Brindley was operating under an actual conflict of interest. Ferguson—again, speaking through Brindley—contends in a footnote that "[Brindley] assumed that Labno was acting as a rogue agent upset" by past interactions with Brindley and that because of this assumption Brindley "was unable to fully appreciate the extent of the conflict and adequately counsel Mr. Ferguson thereon." *Id.* at 2 n.1. But this, if true, reflects that while representing Ferguson prior to the sentencing, Brindley was not operating under a concern that the authorities could become aware of misconduct on his part. Rather, the claim is that the triggering event was at the sentencing hearing, when Labno indicated that his questions had been okayed by prosecutors. But at that point in time, any contention that Brindley's representation was, or could have been, affected by a

17

concern that the authorities is unsupported.

Specifically, Ferguson's contention that at the sentencing hearing, Brindley either refrained from aggressive cross-examination or was unduly hostile in a manner that hurt Ferguson—which the Court notes seem to be mutually exclusive propositions—is not supported by anything in the record. The sentencing hearing spanned two days and included thorough, vigorous, and sustained cross-examination by Brindley. The proposition that anything was left on the table is beyond speculative; it's not supported at all. And far from being unduly hostile, Brindley's representation during sentencing was sufficiently effective that it contributed to the Court's imposition of a sentence significantly below the advisory Guidelines range, premised in part on the ATF agents' inappropriate conduct in connection with the search.

Even if Brindley's demeanor during the sentencing hearing could somehow be subject to criticism (which it was not), that would not end the inquiry. Rather, what matters is whether this had an adverse effect on Ferguson. Here the record does not support any such contention.

That aside, it is unclear to the Court how there is any viable basis upon which to contend that Labno's testimony, in October 2023, about questions asked of Ferguson *five years earlier* should have triggered an immediate halt to the proceedings and questioning and a hearing about actual or potential conflicts. In this regard, it is significant that there is nothing in the record indicating any current or ongoing inquiry regarding Brindley's conduct vis-à-vis Ferguson (or otherwise) at any relevant point during the pendency of the case, including the proceedings on the motion to suppress in 2019-2020, the negotiation of and entry of Ferguson's guilty plea in early 2021 and

again in January 2023, or the sentencing in October 2023.

In sum, Ferguson has not shown that there was any actual conflict of interest at any point in the proceedings.  For this reason, there is no basis to presume prejudice.  Instead, Ferguson must demonstrate that he was prejudiced by the claimed potential conflict.

## C.    Knowledge of the conflict

Ferguson also contends that Supreme Court caselaw requires an automatic reversal:  "Under *Holloway* and *Cuyler*, a trial court has a duty to inquire adequately into a trial counsel's conflict of interest if it knows or *reasonably* should know that a particular conflict exists." *Holleman v. Cotton*, 301 F.3d 737, 742 (7th Cir. 2002) (citing *Holloway v. Arkansas*, 435 U.S. 475, 483–84 (1978) and *Cuyler v. Sullivan*, 446 U.S. 335, 347 (1980)) (emphasis added).  According to Ferguson, reversal is required because this Court failed to inquire into a conflict about which it reasonably should have known. Ferguson alleges that this Court "reasonably should have known" about the conflict because Ferguson attached to his motion to suppress (filed in December 2019) an arrest report that included a reference to Labno asking Ferguson if he could provide information about any potential criminal conduct by Brindley.  Ferguson asserts that, "even in the absence of an objection, the Court reasonably should have known about the conflict" because of the information in the attachment.  Def.'s Reply Mem. Regarding § 2255 Pet. at 4.

As a preliminary matter, Ferguson misstates the law.  It is incorrect that a failure to conduct a colloquy into the alleged conflict warrants automatic reversal under these circumstances.  In *Mickens v. Taylor*, the Supreme Court was careful to distinguish

19

when such reversal is automatic and when it is not: "*Holloway* . . . creates an automatic reversal rule *only* where defense counsel is forced to represent codefendants over his timely objection, unless the trial court has determined that there is no conflict." *Mickens*, 535 U.S. at 168 (emphasis added) (citation omitted). A trial court has a duty to inquire about a conflict of interest when "the trial court knows or reasonably should know that a particular conflict exists—which is not to be confused with when the trial court is aware of a vague, unspecified possibility of conflict." *Id.* at 168–69 (internal citation and quotation marks omitted) (clarifying this duty as articulated in *Holloway* and *Cuyler*). "[A]utomatic reversal when there existed a conflict that did not affect counsel's performance, but the trial judge failed to make the *Sullivan*-mandated inquiry, makes little policy sense." *Id.* at 172. In other words, automatic reversal due to a conflict of interest is only required where (1) an actual conflict exists, (2) the court knows or reasonably should know of the actual conflict, and (3) the court fails to inquire into the actual, known conflict.

This Court has already determined that there was no actual conflict of interest between Ferguson and Brindley. It is still necessary, however, to determine whether this Court breached a duty to inquire into a known conflict, because if such a breach occurred then prejudice is presumed under *Strickland*: "If the trial judge knew or should have known that a potential conflict of interest existed and did not adequately address the issue with the defendant, then [the Seventh Circuit] will presume prejudice." *United States v. Wallace*, 276 F.3d 360, 366–67 (7th Cir. 2002) (citation omitted).

The contention that the Court knew or should have known of a potential conflict of interest between Ferguson and Brindley is baseless. As discussed earlier, Ferguson

premises this contention solely on the fact that he had attached as an exhibit to the motion to suppress, filed in December 2019, a copy of the report that referenced Labno's question to him about Brindley. The pertinent paragraph in the report, however, was not referenced in the motion to suppress. The motion's only mention of Labno's discussion with Ferguson is that "[a]gents interviewed Mr. Ferguson in their squad car,"; and on that, it says only that during the interview, "[a]gents indicated that they would not leave his home, but told Mr. Ferguson that they would not detain his family if they chose to leave." Def.'s Mot. to Suppress at 2. The passage in the ATF report describing Labno's questions regarding Brindley was not brought to this Court's attention until Ferguson's final reply brief on his converted section 2255 motion, which was filed on May 15, 2024. *See* Def.'s Reply Mem. Regarding § 2255 Pet. at 2. The proposition that the Court should have known, based on a single, unreferenced paragraph buried in an attached exhibit, that there was a conflict of interest that warranted a colloquy is not reasonable. The same is true of the contention that a lack of a colloquy under these circumstances warrants automatic reversal. (And again, without an indication of an *ongoing* inquiry into Brindley at the time of the sentencing, or indeed anything after Labno's question or two to Ferguson five years earlier, there is no viable basis for a contention that there was a *present* conflict, either actual or potential.)

In short, there is no basis to presume prejudice under *Strickland*, because there was no knowledge on the Court's part of the potential for a conflict and thus no requirement for a colloquy. Ferguson knew that Labno had questioned him about Brindley and sought cooperation if Ferguson could provide information about Brindley. And Brindley likewise had access to the arrest report at least by December 2019, the

date he attached it as an exhibit to the motion to suppress. But rather than bring this directly to the Court's attention at any point prior to filing the present motion, Brindley and Ferguson instead sat on the information for over four years. Neither of them brought up the issue of a conflict at any time during the years-long proceedings in this case. Ferguson cannot now use his failure to do so to justify a presumption of prejudice.

The Court also notes, as indicated earlier, that when Labno's five-years-earlier question to Ferguson *was* brought to the Court's attention during the October 2023 sentencing hearing, there was no basis to believe that it suggested any *current* problem. As the Court has noted, it was a brief reference to a single question during an encounter between Labno and Ferguson that had taken place five years earlier. It did not suggest any conflict, potential or actual, at any relevant time during the proceedings before the Court. The Court breached no duty in this case, where at most "a vague, unspecified possibility of conflict" was suggested. *Mickens*, 535 U.S. at 169. For this reason, no colloquy was required, and Ferguson must show prejudice under the *Strickland* standard.

## D.    Prejudice to Ferguson

Ferguson contends that, due to the alleged conflict, Brindley's representation fell below an objective standard of care that prejudiced him. Ferguson asserts that Brindley's representation failed in three ways:  (1) he failed to ask questions of agent Labno regarding the basis for the supposedly-DOJ-approved investigation into Brindley; (2) he failed to ask more detailed questions regarding witness Jesse Guajardo's credibility; and (3) he failed to ask codefendant Jesus Dominguez questions regarding

22

whether Ferguson was present when the guns at issue were sold. *See* Suppl. to Mot. to Vacate Sentence Under § 2255 at 3–4. Ferguson argues that, had Brindley pursued these points, there is a reasonable probability that the outcome of the proceedings would have been different and thus that he was prejudiced by Brindley's ineffective assistance.

Ferguson has not shown he was prejudiced, or even adversely affected, by Brindley's representation. Though Ferguson contends that the claimed investigation regarding Brindley caused him "to make a choice advancing his own interests to the detriment of his client's interests," *United States v. Wright*, 85 F.4th 851, 859 (7th Cir. 2023), the record does not support this argument.

Starting with the period before the sentencing hearing—which, to be clear, Ferguson does not reference in his argument regarding prejudice—there is nothing to indicate that Brindley's representation was anything less than zealous, vigorous, and effective. Brindley filed and litigated the motion to suppress, resulting in findings of Fourth Amendment violations that redounded to Ferguson's benefit at sentencing. Brindley then negotiated on Ferguson's behalf a deal that called for dismissal of several of the charges. Then, out of concern for prejudice to Ferguson from the state court proceedings, Brindley successfully pursued a motion to vacate the guilty plea. He then prepared for trial, and filed further motions seeking to take advantage of the Court's Fourth Amendment findings. And he ultimately negotiated for Ferguson a second guilty plea deal that, again, called for the dismissal of several charges.

Ferguson does not suggest that Brindley's representation during any of the

proceedings just referenced was anything less than adequate.[2] But even if he did, the contention would lack merit. The record reflects zealous representation of Ferguson by Brindley, including admitting his own claimed error in connection with the (successful) motion to vacate the first guilty plea. And there is nothing in the record to suggest that Brindley was impacted by any potential conflict when negotiating to secure the best outcome for Ferguson. Finally, any contention that a better deal could have been negotiated by someone other than Brindley—a contention, to be clear, that Ferguson does not make—is too speculative to support a finding that Ferguson was adversely affected. *Cf. United States v. Cirrincione*, 780 F.2d 620, 629 (7th Cir. 1985) ("An actual conflict of interest that adversely affected the defendant's lawyer's performance must be evidenced by specific instances in the record.").

As discussed, Ferguson does assert three specific instances during the sentencing hearing in which he contends he was prejudiced by supposedly deficient representation. None of these instances, either separately or together, supports a finding of prejudice. The contention that Brindley did not adequately pursue certain lines of questioning or press certain aspects of a witness's credibility is entirely

---

[2] The most that Ferguson contends, in his supplement to his § 2255 motion, is that Brindley may have become unduly hostile towards the prosecution and lost objectivity in his representation of Ferguson but then asserts that "[i]t is impossible to gauge how undue hostility and lost objectivity may have impacted an attorney's performance or altered what he might or might not have done." Suppl. to Mot. to Vacate Sentence Under § 2255 at 1. This is nowhere near a viable claim of actual prejudice under *Strickland*. The only other similar reference comes in Ferguson's reply brief on his initial motion to vacate, in which he stated that Brindley's "objectivity *may* have been compromised by learning that there was an investigation approved by main justice." But Brindley did not learn this, they contend, until the sentencing hearing. The Court addresses the claim of prejudice during the sentencing hearing in the next paragraph of the text.

conjectural—and it is even more conjectural that further questioning had any reasonable potential of getting Ferguson anything of value. But the key point is that there is no indication in the record that any witnesses got a pass, or anything close to it, when being questioned by Brindley. In fact, the record reflects that the Court credited Brindley's effective arguments during the sentencing hearing that resulted in a below-Guidelines sentence for Ferguson. *See* Tr. of Proceedings at 444:14–18 ("I have to look at the corners that were cut in order to take [Ferguson] down. And I don't have any doubt that corners were cut. They were. And that's going to have an impact on the sentence . . . ."). Put simply, there is nothing in the record to support the proposition that Brindley's questioning, or lack of questioning, of these witnesses reasonably could have produced a different outcome.

### Conclusion

For the reasons stated above, the Court denies defendant Terry Ferguson's section 2255 motion and his motion for release [dkt. nos. 492, 506, 514]. The Court issues a certificate of appealability. *See* 28 U.S.C. § 2255(c)(2).

Date: June 11, 2025

_____
MATTHEW F. KENNELLY
United States District Judge